

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| DANA KELLEY, Personal representative of the Estate of Gary Kenneth Kelley, | § § § | |
| Plaintiff, | § § | |
| vs. | § § | CIVIL ACTION NO. 6:05-80-HFF |
| RICKY CHASTAIN, in his representative capacity for the Office of the Laurens County Sheriff and JIMMY CARLTON, TOBY PRICE, J.L. WOOTEN, JOHN DOE and SAM SNOW, Officers with the Laurens County Sheriffs Department, | § § § § § § § § | |
| Defendants. | § | |

**ORDER**

**I.   INTRODUCTION**

This case was filed as a civil rights action. Plaintiff also asserts negligence, wrongful death and survival action state claims. The Court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 1331 and 1367. Having carefully considered the motion, the response,[1] the reply, the record, and the applicable law, it is the judgment of this Court that 1) Defendants' motion for summary

---

[1] Plaintiff concludes her October 4, 2007, response by stating that "This is Part A of Plaintiff's response to be supplement[ed]." (Plaintiff's Response 6.) Three and a half months later, however, no further response has been submitted. With this in mind, and because no motion has been filed requesting permission to supplement or an extension of time to file such supplement, the Court construes Plaintiff's failure to supplement the response as her decision not to do so.

judgment will be granted as to Plaintiff's federal claims, except the claims against Defendants John Doe and Sam Snow, which will be dismissed without prejudice, and 2) Plaintiff's state claims will be remanded so that they can be adjudicated in state court.

## II.     FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

    *A.     Factual History[2]*

> The decedent, Gary K. Kelley, was arrested by the Laurens County Sheriff's Department on July 23, 2003 for breach of peace and indecent exposure. [Decedent] was transported to the R. Eugene Johnson Detention Center in Laurens County at approximately 1:00 in the morning.  At the time of admission he was scored out as minimum security level.  Nonetheless this classification was overridden to medium security classification level by admitting Officer Wooten.
>
> The intake form from the detention center alleges that [Decedent] received a disciplinary infraction at the intake process . . . that he was "Drunk."  As a result he was placed in a maximum security classification and placed in the cells with inmates having the highest risk or who were in segregation for protective purposes.
>
> Upon information and belief [Decedent] was placed in Cell C-11 with Phillip Derrick.  Mr. Derrick advised the officers that [Decedent] was mentally unbalanced and should be placed in an observation cell by himself.  He requested specifically that [Decedent] not be placed in his cell.  Nonetheless officers Wooten, Taylor, Simmons and Carlton required Mr. Derrick to remain in his cell and be housed with [Decedent].  At the time [Decedent] requested to talk with someone but his request was ignored by the officers present.
>
> During the early morning hours [Decedent] began to talk about killing himself.  Concerned for [Decedent's] safety Mr. Derrick pushed the intercom button in C-11 to summon the guards. [Decedent] fell asleep.  While [Decedent] was sleeping Mr. Derrick spoke with the defendant Jimmy Carlton and advised him that [Decedent] was talking about killing himself.  Upon information and

---

[2]Except for the legal conclusion contained therein, the Court will construe these facts, copied from the complaint, in the light most favorable to Plaintiff.

belief officer Carlton relayed this message to his supervisor Price. Defendant Carlton communicated back to Mr. Derrick that the officers were not going to move [Decedent] from C-11.

After speaking with defendant Carlton, Mr. Derrick woke up [Decedent] and asked him to inform the officers of his suicidal feeling to the guards on the intercom. [Decedent] did so and the officers responded on the intercom that [Decedent] was not going to be moved.

At approximately 8:00 am later that morning Mr. Derrick used the intercom to advise the officers that he and [Decedent] were having a conflict and [Decedent] was acting crazy. At approximately 10:00 am the officers removed [Decedent] from cell C-11. At the time of his removal [Decedent] again indicated to the officers that he wished to kill himself. The guards took no action in response to this statement. Upon information and belief [Decedent] was then placed in C-5.

Upon information and belief officer McIntosh asked Eddie Norris, who was being housed in the minimum security A wing, whether he would have a problem with [Decedent] being placed in his cell. He indicated that he would not as he and [Decedent] were friends.

On July 24, 2003 [Decedent] was taken to bond court. When he returned to the detention center he requested to make a phone call and was refused. He advised the unknown guard John Doe that he was going to kill himself but his statements were ignored.

[Decedent] was not placed in the cell with Mr. Norris on the minimum security A wing but he was placed back in C-5 on the maximum security wing of the detention center by himself.

During the course of the morning and afternoon [Decedent] attempted to contact the supervising officers by pushing his intercom button and knocking on his door. These attempts to have unknown officer Sam Snow respond to his requests were ignored. [Decedent] called another inmate Joel Robinson over to his cell as Mr. Robinson returned from recreation. [Decedent] asked Robinson to get the attention of the officers to come to his cell. Mr. Robinson went to the officers window and raised his hand displaying five fingers indicating they needed to check on cell C-5. This request for assistance was ignored by unknown guard Sam Snow.

> In the late afternoon of July 24, 2003 after dinner had been served by the trustees [Decedent] once again began kicking on his cell door for an officer to come to see him. Neither Sam Snow [n]or John Doe responded to [Decedent's] request for assistance.
>
> Approximately at 5:50 on July 24, 2003 an officer was making a walk through of the cells on C wing. When he came to [Decedent's] cell he looked in and saw [Decedent] hanging by a towel from the ceiling area. He made no attempt to cut [Decedent] down. Instead he went to get other guards on duty.
>
> The guards returned to [Decedent's] cell to find him hanging by his neck by a towel tied to a sprinkler head on the ceiling on the cell. He was cut down and taken to the Laurens County Hospital where he was pronounced dead.
>
> Upon information and belief [Decedent] suffered conscious physical pain and psychological suffering in the days before his death including the violent trauma of asphyxiation.
>
> Plaintiff alleges the defendant officers Wooten, Price, Carlton, and other unknown employees Doe and Snow had constructive and actual notice of [Decedent's] serious medical need for psychological help and need to be placed on the suicide watch. Such notice, included but is not limited to, notice of prior suicidal tendencies while incarcerated at the detention center and statements by inmate Phillip Derrick and [Decedent] himself that he was threatening to kill himself.

(Complaint ¶¶ 9-23.)

    *B.    Procedural History*

Plaintiff filed this action in state court on November 18, 2004, and Defendant Laurens County Sheriff's Department was served on or about December 13, 2004. Defendants removed the action to this Court on January 11, 2005.

Defendants subsequently filed the instant motion for summary judgment. The Court, having been briefed on the relevant issues, is now prepared to render its judgment.

### III.    STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party bears this initial burden of informing the Court of the basis for its motions, and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court reviews the record by drawing all inferences most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654 (1962)).

"Once the moving party carries its burden, the adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The adverse party must show more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. If an adverse party completely fails to make an offer of proof concerning an essential element of that party's case on which that party will bear the burden of proof, then all other facts are necessarily rendered immaterial and the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 322-23.

Hence, the granting of summary judgment involves a three-tier analysis. First, the Court determines whether a genuine issue actually exists so as to necessitate a trial. Fed. R. Civ. P. 56(e). An issue is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the non moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Second, the

Court must ascertain whether that genuine issue pertains to material facts. Fed. R. Civ. P. 56(e). The substantial law of the case identifies the material facts, that is, those facts that potentially affect the outcome of the suit. *Anderson*, 477 U.S. at 248. Third, assuming no genuine issue exists as to the material facts, the Court will decide whether the moving party shall prevail solely as a matter of law. Fed. R. Civ. P. 56(e).

Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327. The primary issue is whether the material facts present a sufficient disagreement as to require a trial, or whether the facts are sufficiently one-sided that one party should prevail as a matter of law. *Anderson*, 477 U.S. at 251-52. The substantive law of the case identifies which facts are material. *Id*. at 248. Only disputed facts potentially affecting the outcome of the suit under the substantive law preclude the entry of summary judgment.

### IV.    DISCUSSION AND ANALYSIS

#### A.    *Deliberate Indifference Claims*

Defendants maintain that there is no evidence that Defendants Wooten, Doe or Snow were told of a threat of suicide, a prior suicide attempt, or that Decedent was a suicide risk. Defendants further allege that, even assuming that Defendant Carlton received information about a suicide threat by Decedent, Defendant Carlton did not act with deliberate indifference because he immediately informed his superior about the purported threat. Moreover, Defendants argue that they cannot be held liable for a due process violation based on negligence or absent proof of actual knowledge of any prior attempt or threat by Decedent to commit suicide. Defendants also contend that they did

6

not act with deliberate indifference in connection with their discovery of Decedent's hanging and their treatment of Decedent thereafter.

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer v. Brennan*, 511 U.S. 825, 837 (1994). This standard is the same as that which applies in cases arising under the Fourteenth Amendment, where prison officials are accused of deliberate indifference to a substantial risk of serious harm to prison inmates. *Young v. City of Mount Ranier*, 238 F.3d 567, 575 (4th Cir. 2001). Accordingly, Eighth Amendment cases concerning prisoner claims of deliberate indifference are relevant to the Fourteenth Amendment claims here. *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 243-44 (1983) (stating that pretrial detainees are entitled to at least the same protection under the Fourteenth Amendment as are convicted prisoners under the Eighth Amendment).

As a general matter, "[o]nly governmental conduct that shocks the conscience is actionable as a violation of the Fourteenth Amendment." *Young*, 238 F.3d at 574 (quotation marks and citation omitted). The degree of culpability on the part of a governmental actor that is sufficient to shock the conscience will depend on the circumstances of any given case. *Id.* In cases where the government is accused of failing to protect a detainee from a substantial risk of physical harm, "conduct that amounts to 'deliberate indifference' . . . is viewed as sufficiently shocking to the conscience that it can support a Fourteenth Amendment claim." *Id.* at 575.

The Fourth Circuit has long held that, where police know that a pretrial detainee is on the verge of suicide, such circumstances give rise to the kind of serious medical need to which state

7

officials must not, under the due process clause, be deliberately indifferent. *Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir. 1990). The Fourteenth Amendment, however, does "not contemplate liability upon the premise that all self-inflicted harm is someone else's fault." *Id*. at 36

In *Belcher,* a pretrial detainee hung himself with his belt after police officers placed him in a jail without removing his belt or shoes. *Id*. at 34. Because the plaintiff neglected to present any "objective evidence that [he] even had a serious need for such attention . . . [to] suicidal tendencies" the court held that he had failed to state a due process claim. *Id.* at 35.

Where the evidence shows, at most, that an officer's response to a perceived substantial risk was unreasonable under the circumstances, a claim of deliberate indifference cannot succeed. "Deliberate indifference is a very high standard-a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999).

"[A]n officer's response to a perceived risk must be more than merely negligent or simply unreasonable." *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 306-07 (4th Cir. 2004). "At most, [the officer's] failure to take additional precautions [is] negligent [i.e.,unreasonable under the circumstances], and not deliberately indifferent." *Brown v. Harris*, 240 F.3d 383, 390-91 (4th Cir. 2001). Several other circuits have come to the same conclusion. *E.g., Williams v. Kelso*, 201 F.3d 1060, 1064-65 (8th Cir. 2001) (holding that, assuming that jail officials were told to monitor a prisoner's vital signs, "[t]he failure to follow this instruction over a period of about seven hours . . . was a matter of negligence at most; there was not a showing of deliberate indifference"); *Burrell v. Hampshire County*, 307 F.3d 1, 8 (1st Cir. 2002) (noting without deciding that "[c]onceivably, a response that was colorable and taken in good faith might still be enough to negate deliberate indifference even if it were inadequate from an objective standpoint (and thus negligent)"); *Cavalieri*

*v. Shepard*, 321 F.3d 616, 622 (7th Cir. 2003) (noting that the defendant "was not required to take perfect action or even reasonable action" in response to perceived risk); *But see Trammell v. Keane*, 338 F.3d 155, 164 (2d Cir. 2003) (noting that response must be "reasonable" to negate claim of deliberate indifference).

Liability under this standard thus requires two showings. First, the evidence must show that the official in question subjectively recognized a substantial risk of harm. It is not enough that the officers should have recognized it; they actually must have perceived the risk. *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). Second, the evidence must show that the official in question subjectively recognized that his actions were "inappropriate in light of that risk." *Id.* As with the subjective awareness element, it is not enough that the official should have recognized that his actions were inappropriate; the official actually must have recognized that his actions were insufficient. *Brown v. Harris*, 240 F.3d 383, 390-91 (4th Cir. 2001).

Defendants maintain that Plaintiff has failed to produce any evidence that the individual Defendants were made aware at any point that 1) Decedent had threatened to commit suicide, 2) Decedent had made a prior suicide attempt, or 3) that Decedent was a suicide risk. The Court agrees.

In support of Plaintiff's notion that the individual Defendants were, in fact, on notice that Decedent had previously attempted suicide, Plaintiff has submitted the Inmate Classification Sheet from Decedent's arrest on or about May 26, 2003, on which he answered "Yes" to the question "Have you ever attempted suicide?" (May 26, 2003, Inmate Classification Sheet ¶ B(1).)

The evidence before the Court, however, demonstrates that the individual Defendants were unaware of the May 26, 2003, Inmate Classification Sheet. As stated above, "[d]eliberate

9

indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care." *Young*, 238 F.3d at 575-76.  Because Plaintiff has failed to make such a showing here, Defendants will prevail on this issue.

Plaintiff argues that Defendants demonstrated reckless indifference, negligence and a lack of training when they completed the July 23, 2003, Inmate Classification Sheet.[3] Plaintiff maintains that this is evidenced by Defendants' failure to 1) wait until Decedent was no longer intoxicated to complete the form, 2) pull the May 26, 2003, Inmate Classification Sheet, and 3) write "yes" on the form as opposed to using a check mark.  Plaintiff also states that these alleged missteps demonstrate a failure to train and a failure to follow their own procedures.

Although it may be true that the Inmate Classification Sheet was improperly completed, the Court is unable to find that such purported conduct rises to the level of deliberate indifference. Simply stated, the evidence before this Court fails to "show that [the individual Defendants] subjectively recognized a substantial risk of harm."  *Rich*, 129 F.3d at 340 n.2.  Moreover, as discussed below, Plaintiff has failed to establish a § 1983 cause of action against Defendant Sheriff's Department.  At most, Plaintiff can establish a negligence claim on these facts.  Accordingly, the Court finds that Plaintiff has failed to establish a deliberate indifference claim here.

Plaintiff also contends that Decedent "died as a result of . . . Defendant's failure to prevent and take reasonable precautions against a known risk of suicide."  (Plaintiff's Opposition 1.)

---

[3] According to that document, Decedent indicated that he had never attempted suicide nor was he contemplating suicide.  (July 23, 2003, Inmate Classification Sheet ¶¶ B(1) and (2).)

10

According to Plaintiff, Defendants were aware that Decedent had threatened to commit suicide as evidenced by the following statements from Decedent's fellow inmates:

> When [Decedent] came in, he was intoxicated and the officers made him go in the cell. [Decedent] said he needed to talk to someone but no one would listen. When [Decedent] . . . came back [from Court he] . . . made the statement he was going to kill himself. But the officer would not listen to him. The Officer made the rounds, came back about 45 minutes [later] and the rookie officer found [Decedent] hanging in cell # 5.

(Statement of Walter Antonio Calhoun.)

> When [Decedent] came in . . . he was intoxicated. . . . [Decedent] had asked to use the telephone, but the officers would not let him use the phone. . . . [W]hen he came back [from Court,] he again asked to use the phone but officer would not let him. . . . [H]e made the statement that was going to kill himself but officer ignored him.

(Statement of Karyare Rashad Williams.)

> That night that they brought [Decedent] to my room he told them . . . that he was going to kill himself while he was in the room with me. They came back on the speaker and said that [Lieutenant] Price said ["Oh well,] he was not moving him for anything.

(Second Statement of Phillip Derrick.)

As observed by Defendants in their reply to Plaintiff's response to the motion for summary judgment, the statements of Calhoun and Williams fail to specifically name any officer who was deliberately indifferent to Decedent's alleged threats of suicide. (Defendants' Reply 3.) In an action such as this, however, the plaintiff must demonstrate which individual Defendant's conduct violated the law.

This burden requires a plaintiff to come forward with specific facts establishing the violation. *Taylor v. Meacham,* 82 F.3d 1556, 1559 (10th Cir. 1996). "Plaintiff has the 'burden to show with particularity facts and law establishing the inference that defendant violated a constitutional right.'"

11

*Abeyta By & Through Martinez v. Chama Valley Ind. Sch. Dist. No. 19,* 77 F.3d 1253, 1255 (10th Cir. 1996) (quoting *Walter v. Morton,* 33 F.3d 1240, 1242 (10th Cir. 1994)). A plaintiff suing public officials must establish specific facts showing the personal involvement of each named individual defendant. *Green v. Branson,* 108 F.3d 1296, 1302 (10th Cir. 1997). Conclusory, non specific, and generalized allegations of constitutional deprivations are not sufficient. *Pride v. Does,* 997 F.2d 712, 716 (10th Cir. 1993). Thus, the Court find that the statements of Calhoun and Williams, void of specific facts concerning the conduct of specific individuals, are insufficient to establish a Fourteenth Amendment violation.

The statement by Derrick, however, specifically names Defendant Price as the officer who, after being told by Defendant Carlton that Decedent was threatening suicide, allegedly stated, "[Oh well,] he was not moving him for anything." (First and Second Statements of Phillip Derrick.) The Court is unable to find, however, that Defendants Carlton or Price's conduct rises to the level of deliberate indifference.

Concerning Defendant Carlton, according to Derrick's first statement, Derrick "told [Defendant] Carlton that [Decedent] was talking about killing his self . . . [Defendant Carlton] called up front and told [Defendant Price] and came back on my speaker and told me that they were not going to move him." (First Statement of Phillip Derrick.) The Court finds that, although Defendant Carlton's reporting Decedent's alleged suicide threat to Defendant Price without more may have been negligent, such action/inaction does not rise to the level of deliberate indifference. *See Gordon v. Kidd,* 971 F.2d 1087, (4th Cir. 1992) (stating that, when the evidence shows that an officer was sufficiently concerned about suicide to warn another officer about a suicide threat, the officer was not deliberately indifferent).

12

Regarding Defendant Price, assuming that he made the statement that "he was not moving [Decedent] for anything," (Second Statement of Phillip Derrick), such an assertion fails to demonstrate to this Court that Defendant Price's actions are "shocking to the conscience." *Young*, 238 F.3d at 575. In fact, such statement could readily be interpreted as a precaution by Defendant Price to protect Decedent from any self-inflicted injury.

Moreover, Defendant Price cannot be held liable for his alleged Fourteenth Amendment violation of Decedent's rights because the purported conduct of not moving Decedent did not cause the injury. In fact, Decedent did not hang himself until two days later when he was moved to another cell.[4] Therefore, the Court finds that Defendant Price's actions were, at most, negligent. As stated above, however, in situations in which the evidence shows, at most, that an officer's response to a perceived substantial risk was unreasonable under the circumstances, a claim of deliberate indifference cannot succeed. *Parrish ex rel. Lee*, 372 F.3d at 306-07.

Plaintiff also avers that Defendants showed deliberate indifference by placing him in Cell C-5. According to Plaintiff, Defendant Price

> demonstrated a deliberate indifference to the Decedent by placing Decedent in C-Max which no one in this case disputes having a long history of malfunctioning intercoms, doors, locks and faulty sprinkler heads. [Defendant Price] caused Decedent . . . to be placed in Cell C-5, despite his admitted knowledge that Defendants were on notice with problems with this cell and others which go back many years and extends up through the day the Plaintiff died.

(Plaintiff's Opposition 4) (citing September 13, 2000 Incident Report (stating that C-5 "does not need to be used until it is repaired. . . . Should be corrected ASAP. Administrator knows about this

---

[4]There is no evidence in the record to support any assertion that Defendant Price had any part in Decedent's subsequently being moved to another cell.

condition.")) As already observed, however, the record before this Court simply does not support Plaintiff's contention that Defendant Price had anything to do with Decedent being placed in C-5. Thus, the Court cannot hold that Plaintiff has established deliberate indifference here.

Plaintiff also complains that

> Defendants continue[d] a course of deliberate indifference for its employees and inmates safety by ignoring its jail director and the minimum standards for jail safety and did absolute[ly] nothing to correct the problem. The response time to the Decedent Plaintiff was delayed by the inability to communicate with officers, responding but not knowing what they were responding to and consequences they were not prepared with a knife to cut Decedent . . . down to render first aid, they were not able to negotiate the doors and locks to render first aid and they failed to bring a breathing apparatus because they thought they were responding to a fight or riot.

(Plaintiff's Opposition 5-6.) As Sheriff Chastain pointed out, however, "according to the camera, Mr. Willis spotted [Decedent] at 1651 [6:51 P.M.]" and "[t]he officers were in [Decedent's] cell at 1652 [6:52 P.M.] . . . [w]ithin one minute's time[.]" (Defendants' Reply 7) (citation omitted). Therefore, any suggestion by Plaintiff that the allegedly malfunctioning equipment rises to anything beyond a negligence claim is without merit.[5]

In sum, although Defendants' actions may well constitute negligence, they do not meet the stringent standard of deliberate indifference. *Grayson*, 195 F.3d at 695 ("Deliberate indifference is a very high standard–a showing of mere negligence will not meet it."). Courts should not

---

[5]Plaintiff also contends that a February 4, 2003, Proposed Budget for 2003-2004, request from the jail administrator to the county administrator demonstrates deliberate indifference on the part of Defendants. The County is not a defendant in this matter. Inasmuch as the request is from the Sheriff's Department to the County, requesting money to repair the malfunctioning equipment, it simply cannot be said that this document shows that Defendants' actions were deliberately indifferent.

14

precipitously interfere with or seek to supervise the difficult decisions faced regularly by law enforcement officers. *Id*. at 696 ("To lower this [deliberate indifference] threshold would thrust federal courts into the daily practices of local police departments."). Therefore, because the conduct complained of by Plaintiff fails to satisfy the "very high standard" of deliberate indifference, the Court concurs in Defendants' view that Plaintiff has failed to establish that Defendants violated Decedent's Fourteenth Amendment rights.

### B.    *Defendants John Doe and Sam Snow*

Defendants submit that Plaintiff has failed to substitute any named officer or officers having actual knowledge of Decedent's suicidal tendencies for the "John Doe" or the "Sam Snow" defendants. From its review of the record, it appears to the Court that this assertion is correct.

Through discovery, it would appear that Plaintiff has had the opportunity to learn the identity of Defendants Doe and Snow. Nevertheless, given that Plaintiff has failed to move to amend her complaint so that she could name the parties, the Court finds dismissal without prejudice to be appropriate.

### C.    *Qualified Immunity*

Defendants claim that Defendant officers are entitled to qualified immunity. The Court need not fully make this determination.

Determining whether a state officer is entitled to qualified immunity is a two-step inquiry. First, the Court must decide "whether a constitutional right would have been violated on the facts alleged." *Saucier v. Katz*, 533 U.S. 194, 200 (2001). "Next, assuming that the violation of the right is established, courts must consider whether the right was clearly established at the time such that

it would be clear to an objectively reasonable officer that his conduct violated that right." *Brown v. Gilmore*, 278 F.3d 362, 367 (4th Cir. 2002).

As set forth above, Plaintiff has failed to establish that the Defendants' actions/inactions on the date in question were violative of Decedent's constitutional rights. Accordingly, the Court need not consider the second prong of the analysis.[6]

### D.     *Sheriff Department's Liability*

Defendants aver that no Sheriff Department's policy or custom caused the alleged deprivation. The Court agrees.

In *Monell v. Department of Soc. Servs.,* 436 U.S. 658 (1978), the Supreme Court held that municipalities and other local governmental bodies constitute "persons" within the meaning of § 1983. *Id.* at 688-89. The Supreme Court, however, has consistently refused to impose § 1983 liability upon a municipality under a theory of respondeat superior. *Board of the County Comm'rs v. Brown,* 520 U.S. 397, 403 (1997). Rather, under *Monell* and its progeny, a municipality is subject to § 1983 liability only when "it causes such a deprivation through an official *policy* or *custom.* " *Carter v. Morris,* 164 F.3d 215, 218 (4th Cir. 1999) (emphasis added).

The Fourth Circuit has determined that a "[m]unicipal policy may be found in written ordinances and regulations, in certain affirmative decisions of individual policymaking officials, or in certain omissions on the part of policymaking officials that manifest deliberate indifference to the rights of citizens." *Id.* (internal citations omitted). Municipal custom, on the other hand, may arise

---

[6]Had the Court found a Fourteenth Amendment violation, however, the Court would hold that Defendants are entitled to qualified immunity because it was unclear to an objectively reasonable officer that Defendants' actions/inactions violated Decedent's constitutional rights.

16

when a particular practice "is so persistent and widespread and so permanent and well settled as to constitute a custom or usage with the force of law." *Id.* (internal quotation marks omitted).

Even if the Court were to conclude that the officers had violated Plaintiff's constitutional rights, the Court would find that Defendant Sheriff's Department is not liable. Section 1983 plaintiffs seeking to impose liability on a municipality must adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights. *Jordan by Jordan v. Jackson,* 15 F.3d 333, 338 (4th Cir. 1994) ("Section 1983 plaintiffs seeking to impose liability on a municipality must, therefore, adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights."). From its review of the complaint, the Court is unable to find that Plaintiff has pled such a policy or custom. This failure is fatal to Plaintiff's claim.

### E.     *Failure to Train Claim*

Defendants assert Defendant Sheriff's Department cannot be held liable for a § 1983 failure to train. For the reasons set forth above, the Court is persuaded.

### F.     *Remaining Federal Claims*

The Court has carefully considered Plaintiff's remaining arguments on her federal claims, but finds them to be without merit. Hence, the Court will enter judgment accordingly.

### G.     *State Claims*

This Court originally had jurisdiction over Plaintiff's state claims against pursuant to 28 U.S.C. § 1367. Section 1367(c)(3) provides, however, that the Court "may decline to exercise

supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

District courts "enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995). In its discretion, the Court has considered "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Shanaghan*, 58 F.3d at 110. Having weighed those factors, the Court is of the opinion that the remaining state claims should be adjudicated in state court.

## V.     CONCLUSION

Accordingly, based on the foregoing discussion and analysis, the Court concludes that 1) Defendants' motion for summary judgment is **GRANTED** as to Plaintiff's federal claims, except the claims against Defendants John Doe and Sam Snow, which are **DISMISSED** without prejudice, and 2) Plaintiff's state claims are **REMANDED** so that they can be adjudicated in state court.

**IT IS SO ORDERED**.

Signed this 24th day of January, 2008, in Spartanburg, South Carolina.

s/ Henry F. Floyd
HENRY F. FLOYD
UNITED STATES DISTRICT JUDGE
